**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

LARRY LEE LEMAY,                    )
                                   )
              **Plaintiff,**        )
                                   )
      **vs.**                        )        **Case No. CIV-07-401-HE**
                                   )
BILL WINCHESTER, et al.,            )
                                   )
          **Defendants.**       )

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights. Pursuant to an order by United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Before the Court are the motions to dismiss of Defendant Kim Johnson and Defendants Steve Hobson, Michael Postier and Scott Savage (County Commissioner Defendants). Plaintiff has filed both a response and a supplemental response to Defendant Johnson's motion, and a response to the County Commissioner Defendants' motion. In addition, the movants have filed replies. Thus, the matters are at issue and ready for disposition. For the following reasons, it is recommended that Defendant Johnson's motion be granted in part and denied in part, and that the County Commissioner Defendants' motion be granted.

Plaintiff is an Oklahoma state prisoner currently housed at the Dick Conner Correctional Center in Hominy, Oklahoma, but at all times relevant to this action, he was housed at the Garfield County Detention Facility (GCDF) in Enid, Oklahoma. In the First

Amended Complaint,[1] Plaintiff names six Defendants, whom he identifies as follows: Bill Winchester, Sheriff of Garfield County; Misty Taylor, GCDF administrator; Kim Johnson, registered nurse at GCDF; Steve Hobson, Garfield County Commissioner; Michael J. Postier, Garfield County Commissioner; and Scott Savage, Garfield County Commissioner. Plaintiff's eight-count complaint[2] centers on the medical care he received for his diabetes while incarcerated at the GCDF on two separate occasions: once beginning on October 11, 2005, through February 16, 2006, as a pre-trial detainee, and again beginning on March 9, 2007, through March 12, 2007, as a state prisoner who was returned to the facility for a court hearing. Plaintiff alleges that on the first occasion he did not receive an appropriate diabetic diet, regular and/or appropriately timed blood sugar testing, or proper insulin dosing. First Amended Complaint, p. 9-11, 13. He further alleges that these conditions resulted in diabetic keto-acidosis and that there was delay/improper treatment of this condition, ultimately resulting in his hospitalization for several days, initially in the intensive care unit. First Amended Complaint, p. 9-11, 14, 15. He alleges that on the second occasion, Defendant Johnson never spoke to him about his medical problems or medications, he was not placed on the diabetic diet he had been receiving while incarcerated at the Oklahoma Department of Corrections, and that his blood sugar was not re-tested in a timely manner, resulting in feeling ill, dehydrated, and thirsty. Id. at 11-12.

---

[1]Plaintiff has filed a motion to file a Second Amended Complaint, in which he seeks to add five additional Defendants, among other things. That motion has been denied by separate order.

[2]Although there are nine numbered counts, there is no count five.

2

He generally alleges that Defendant Winchester was aware of his not receiving adequate medical care due to a previous 2004 incarceration, "where inmate notes and reports were filed about" him having problems receiving insulin doses as prescribed. Id. at 13. He alleges that a 2003 U.S. Department of Justice report indicating that the GCDF was understaffed subjecting inmates to a risk of serious harm, and that the facility nurse was operating beyond her authority due to the lack of protocols and procedures, was sent to Defendant Winchester and Defendant County Commissioners Savage and Hobson, and that the problems have not been resolved. Id. at 14; Opening Brief in Support of Civil Rights Complaint, Ex. 15.[3] Finally, he alleges that Defendant Winchester has violated certain State statutory duties requiring him to provide adequate medical care and a proper diet to jail inmates. Id. at 15-16.       Plaintiff's claims are brought under the Eighth and Fourteenth Amendments for deliberate indifference to his serious medical needs. He also lists the Americans with Disabilities Act in the jurisdictional portion of the First Amended Complaint, see id. at 6, but  makes no specific allegations regarding it.

## I. STANDARD GOVERNING MOTIONS TO DISMISS

Traditionally, a complaint has been subject to Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted if "it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief."

---

[3]From the attached report, it appears that Defendant Postier was not a Garfield County Commissioner at that time, as the report is addressed to "Mr. Wendell Vencl, Chairman, Garfield County Commissioners" and Defendant Postier is not copied as one of the Commissioners on the report.  Ex. 15, p.1,  27.

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007).  However, in Twombly, the Supreme Court remarked that this phrase is "best forgotten as an incomplete, negative gloss on an accepted pleading standard" that "has earned its retirement."   127 S. Ct. at 1969.   In its place, the Court articulated a new "plausibility" standard for reviewing Rule 12(b)(6) motions to dismiss under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; accord Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "Rather than adjudging whether a claim is 'improbable,' 'factual allegations in a complaint must be enough to raise a right to relief above the speculative level.'" Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007) (alterations omitted) (quoting Twombly, 127 S. Ct. at 1965) (evaluating pro se prisoner complaint under plausibility standard).   "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).     Although the familiar "no set of facts" standard has been abandoned, certain principles developed under the standard apply equally to "plausibility" review of a complaint's allegations.  See Twombly, 127 S. Ct. at 1964-65; see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (reviewing pro se prisoner's complaint under plausibility standard).  Accordingly, a court considering the sufficiency of a complaint still must "accept the allegations of the complaint as true and construe those allegations, and any

reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." Kay, 500 F.3d at 1217 (quoting Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002)). Furthermore, a pro se complaint must be liberally construed and held to less stringent standards than pleadings drafted by lawyers. Erickson, 127 S. Ct. at 2200 (quotations omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the broad reading of pro se complaints "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, a reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); accord Twombly, 127 S. Ct. at 1964-65 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)).

Additionally, a court evaluating a complaint tested by a motion to dismiss may consider the complaint and any documents attached to it as exhibits. Hall, 935 F.2d at 1112; see also Erickson, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint).

## II. RELATION BACK OF THE FIRST AMENDED COMPLAINT

Because it ultimately affects the analysis of certain grounds raised in both motions to dismiss, the undersigned must first address the movants' contention that the First Amended

5

Complaint does not relate back under Fed.R.Civ.P. 15(c).  Plaintiff's original complaint was filed on April 5, 2007, naming Defendant Bill Winchester, Garfield County Sheriff, and Misty Taylor, Garfield County Jail Administrator. [Doc. No. 1, p. 1].  Plaintiff filed his First Amended Complaint on February 13, 2008, adding Defendant Johnson and the County Commissioner Defendants.[4]

An amendment that "changes the party or the naming of the party against whom a claim is asserted" will only relate back if it arises out of the same conduct, transaction, or occurrence set out in the original complaint and within the time allowed for serving the summons and complaint two additional conditions are met:  the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; **and** (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed.R.Civ.P. 15(c)(1)(C)(i)(and)(ii)(emphasis added); see Garrett v. Fleming, 362 F.3d 692, 696-97 (10th Cir. 2004).  Defendant Johnson and the County Commissioner Defendants contend because they are new parties, Plaintiff must meet both requirements in subsections (i) and (ii).  Furthermore, they contend that he has not done so.  Defendant Johnson's Motion, p. 5-6; County Commissioner Defendants' Motion, p. 5-6.

Plaintiff responds that Fed.R.Civ.P. 15(c)(1)(B) rather than 15(c)(1)(C) governs the

---

[4]In his motion to amend, Plaintiff stated that "[d]uring the course of Discovery ... plaintiff believes there are additional defendant's [sic] that were involved in this cause of action..." Motion for Leave to File An Amended Complaint, p.1.  [Doc. No. 42].

relation back of his amendment since the claims asserted therein arise out of the same

conduct, transaction, or occurrence as that in the original complaint, and that Rule

15(c)(1)(B) and Rule 15(c)(1)(C) are in the disjunctive, making satisfaction of subsection (C)

unnecessary. Plaintiff's Response to Defendant Johnson's Motion, p. 6-7; Plaintiff's

Response to County Commissioner Defendants' Motion, p. 10-11. However, Plaintiff is

incorrect. This issue has been addressed by the Tenth Circuit Court of Appeals:

> According to [Plaintiff] his amendment should have been permitted either
> because Rule 15(b), not 15(c), controlled; or because of the liberal
> construction that courts should afford to pro se pleadings. However, Rule
> 15(b) governs issues, not parties, that were not raised in the pleadings, and so
> is inapplicable. And while it is true that courts construe a pro se plaintiff's
> filings liberally, "'[t]his court has repeatedly insisted that pro se parties follow
> the same rules of procedure that govern other litigants.'" Garrett v. Selby
> Connor Madduz & Janer, 425 F.3d 836, 840 (10th Cir.2005) (quoting Nielsen
> v. Price, 17 F.3d 1276, 1277 (10th Cir.1994)); see also Murray v. City of
> Tahlequah, 312 F.3d 1196, 1199 n. 3 (10th Cir.2002). Rule 15(c), which exists
> to protect defendants from unfair prejudice caused by a plaintiff's tardiness in
> naming them, applies to pro se complaints as to any others. Denial of
> amendment was not an abuse of the district court's discretion.

Pierce v. Amaranto, No. 07-7094, 2008 WL 1931558, at *3 (10th Cir. May 1, 2008).[5] Thus,

all requirements of Rule 15(c)(1)(C) must be met in order for Plaintiff's First Amended

Complaint to relate back to the date of the original. Alexander v. Beech Aircraft Corp., 952

F.2d 1215, 1226-27 (10th Cir.1991). The undersigned finds that the latter two requirements

have not been met. The docket in this case reveals that Kim Johnson was served on April

16, 2008, [Doc. No. 81], and the County Commissioner Defendants were served on April 14,

---

[5]Unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

2008. [Doc. No. 80]. Furthermore, Plaintiff sued the sheriff and jail administrator, and there is nothing in the allegations of the original complaint to indicate that action "would have been brought against [Defendant Johnson or the County Commissioners] but for a mistake concerning the proper party's identity." Accordingly, the undersigned finds that the First Amended Complaint does not relate back to the date of the original pleading.

## III. MOTION OF DEFENDANT JOHNSON

Defendant Johnson moves for dismissal on two grounds. First, she moves to dismiss Plaintiff's State law claims on grounds that Plaintiff has failed to comply with the provisions of the Oklahoma Governmental Tort Claims Act (GCTA or the Act) and that she is not a proper party under the Act. Second, she claims that because the First Amended Complaint does not relate back to the original complaint, all but one of Plaintiff's federal constitutional claims are barred by the applicable statute of limitations.

### A. CLAIMS FOR PLAINTIFF'S 2005-06 INCARCERATION

### 1. GOVERNMENTAL TORT CLAIMS ACT CLAIMS

Defendant Johnson notes that Plaintiff did not plead whether he complied with the provisions of the Act, although that is the exclusive means whereby Plaintiff can recover from a governmental entity for its torts. Defendant Johnson's Motion, p.3. She states that Plaintiff submitted what may be perceived as his notice of claim on February 28, 2007, by filing a letter with the Garfield County Clerk's Office, addressed to Defendants Winchester and Taylor, and the non-party Coleman Id., and attaches a copy of the letter to her motion. She argues that Plaintiff filed his initial complaint herein prior to the expiration of the

mandatory 90 day consideration period, rendering it premature, <u>Id.</u> at 2-3 (citing Okla. Stat. tit. 51, § 157(A)), and that Plaintiff's claim is now untimely as he only had 180 days after the end of the 90 consideration period, or until November 25, 2007, to bring his GCTA action. <u>Id.</u> (citing Okla. Stat. tit. 51, § 157(B)).  She notes that the First Amended Complaint, in which she was first named, was not filed until February 13, 2008 – well after this deadline. <u>Id.</u> at 3.  Defendant Johnson also contends that she is an improper party under the Act, because an employee acting within the scope of her employment cannot be named as a defendant. <u>Id.</u> at 4 (citing Okla. Stat. tit. 51, §§ 152(9), 163(C)).

Defendant Johnson is correct that the filing of litigation within 180 days pursuant to § 157(B) is a condition precedent and an essential element of any right to a cause of action against a county.   <u>Lasiter v. City of Moore</u>, 802 P.2d 1292, 1293 (Okla. Civ. App.1990). Furthermore, a claim cannot be filed until the 90 day consideration period has passed unless the governmental entity earlier denies the claim.  <u>Hathaway v. State ex rel. Med. Research & Technical Auth</u>, 49 P.3d 740, 742-43, 744 (Okla. 2002) (a prematurely filed complaint does not ripen into a timely action when the 90-day period for determining the claim expires).  If suit is then brought after expiration of the 180 day limitations period, it is subject to dismissal. <u>Bryson v. Macy</u>, No. CIV-05-1150-F, 2007 WL 682030, at *12 ) (W.D.Okla. Mar. 1, 2007) (if prematurely filed suit is then properly brought after expiration of the 180 day limitations period, it is subject to dismissal).

Defendant Johnson also argues the GCTA provides that individual employees are not proper defendants under the Act, if they are acting within the scope of their employment.

Defendant Johnson's Motion, p. 3-4. If so, the GTCA is the exclusive means by which Plaintiff can recover in tort for his injuries, Id at 3, and it follows that the Act's notice and claim provisions apply:

> C. Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual consistent with the provisions of Title 12 of the Oklahoma Statutes.

Okla.Stat, tit. 51, § 163(C). "Scope of employment" is defined by the Act as follows:

> "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

Id. at § 152(9). However, the undersigned notes that if Plaintiff alleges acts that would be outside the scope of Defendant Johnson's employment, the procedural requirements of the GTCA would not apply. Pellegrino v. Oklahoma ex rel. Cameron Univ., 63 P.3d 535, 540 (Okla. 2003). Thus, the threshold issue would ordinarily be whether Plaintiff has sufficiently alleged acts by Defendant Johnson which are outside the scope of her employment as a nurse for the GCDF. However, in this case the answer to that question will not affect the outcome of Defendant Johnson's motion to dismiss for if Defendant Johnson *was* acting within the scope of her employment she is not a proper Defendant under the GTCA, and if she *was not*, the claim is barred by the general tort statute of limitations.

### a. Outside the Scope - <u>Pellegrino</u>

If Defendant Johnson were acting outside the scope of her employment, the notice and claim provisions do not apply, and Plaintiff's state law claim is instead governed by Oklahoma's general tort law provisions – including its statute of limitations. <u>See</u> <u>Pellegrino v. Oklahoma ex rel. Cameron Univ.</u>, 63 P.3d 535, 540 (Okla. 2003). Personal state tort claims are governed by Oklahoma's two-year statute of limitations. Okla. Stat. tit. 12, § 95. Plaintiff's claims against Defendant Johnson for his 2005-06 incarceration certainly arose no later than January 5, 2006, when he became ill allegedly as the result of Defendant Johnson's mismanagement of his diabetes and delay in treatment for his diabetic keto-acidosis – and they probably arose much earlier. First Amended Complaint, p. 8, 9, 10, 15; Opening Brief in Support of Civil Rights Complaint, ¶¶ 7, 8, 11, p. 12 ¶ 1, p. 13, ¶ 4; <u>Stephens v. General Motors Corp.</u>, 905 P.2d 797, 799 (Okla.1995) ("for the purposes of 12 O.S.1981, § 95 Third, a negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative") (quoting <u>M.B.A. Constr., Inc. v. Roy J. Hannaford Co., Inc.</u>, 818 P.2d 469, 470 (Okla.1991)). Thus, the latest Plaintiff could bring suit against Defendant Johnson for her alleged actions would have been January 5, 2008. As noted, Plaintiff's First Amended Complaint (which does not relate back) was not filed until February 13, 2008, and the undersigned therefore finds that his state law claims for Defendant Johnson's acts during his 2005-06 incarceration are time barred.[6]

---

[6]The undersigned will address the scope of employment issue in the context of Plaintiff's 2007 incarceration below.

### b.  Within the Scope of Employment - GTCA

Although it is Plaintiff's position that Defendant Johnson was acting with deliberate indifference and thus acting outside the scope of her employment, he also argues that he gave proper notice and timely filed under the GTCA.  However, if his suit is governed by the GTCA, Defendant Johnson is not a proper party and is nonetheless entitled to dismissal. Okla. Stat. tit. 51, §§ 152(9), 163(C).  Thus, whether he gave proper notice and timely filed is irrelevant to his suit against her individually, and her motion to dismiss is meritorious.

### 2.  FEDERAL CONSTITUTIONAL CLAIMS

Defendant Johnson also contends that Plaintiff's claims arising from his 2005-06 incarceration under § 1983 are barred by the applicable statute of limitations.   The period of limitations for a § 1983 action is governed by the forum state's statute for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276-80 (1985) (holding that the statute of limitations for § 1983 is based upon the applicable state law limitations period for a private tort action), superseded by statute on other grounds Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78 (2004).  As noted above, Oklahoma's general tort statute of limitations is two years.  See Okla. Stat. tit. 12, § 95(3); see also Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1988).

Although the length of the limitations period is determined by reference to the law of the forum state, accrual of the cause of action is determined by federal law.  Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995) ("While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims.").  "Since the injury in a

§ 1983 case is the violation of a constitutional right . . . such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting with approval Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994)); see also Fratus, 49 F.3d at 675 ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'") (citations omitted). The Court must therefore identify the constitutional violation and locate it in time. Smith, 149 F.3d at 1154.

As with Plaintiff's claim under Oklahoma's tort law, Plaintiff's claim for deliberate indifference to his serious medical needs by Defendant Johnson certainly accrued no later than January 5, 2006. Thus, the § 1983 limitations period also expired no later than January 5, 2008. The First Amended Complaint, filed on February 13, 2008, is thus untimely with regard to Plaintiff's constitutional claims against Defendant Johnson related to his 2005-06 incarceration at the GCDF.[7]

## B. PLAINTIFF'S GTCA CLAIM FOR HIS 2007 INCARCERATION

Although Defendant Johnson  moves for dismissal of all Plaintiff's state law tort claims on the same grounds, the scope of employment issue *is* dispositive with regard to his 2007 incarceration GTCA claim because Oklahoma's general tort statute of limitations will not bar the claim if the GTCA does not apply. Plaintiff makes the following allegations with regard the 2007 incident:

---

[7]Defendant Johnson does not move for dismissal of Plaintiff's federal constitutional claims related to his 2007 incarceration.

13

On March 9, 2007, I was transported as a prisoner of Department of Corrections, to the Garfield County Detention Facility for a court hearing on March 12, 2007. Upon arrival, Stacy (a shift supervisor) stated to me that the nurse, Kim Johnson would speak to me about my medical problems, and medications, and this was never done. I was also not placed on my diabetic diet, which I have been receiving through doctor's orders from Department of Corrections. I further was not given a medical questionnaire to fill out regarding my medical needs. This also caused a deliberate indifference to be allowed to express my medical issues with the staff.

I was again served the regular menu of the Detention Facility, which contained foods in high amounts of sugars. On March 12, 2007, I was feeling dehydrated and thirsty and I informed staff. About 4pm my blood sugar was tested and it was then 521mg. I was given some insulin coverage, and my blood sugar level was to be re-tested in 2 hours, which was not done.

After shift change at approx. 6:30pm and still feeling sick, I notified Nancy, the shift supervisor for that shift. She stated to me that no one told her about the incident, and did not tell her that my blood sugar needed to be re-tested. At 8:30pm she tested my blood sugar, and it was still high at 438mg. During this period of incarceration, no commissary orders had been placed, and I was only eating food that was served by the Garfield County Detention Facility. The County jail staff including nurse Kim Johnson failed to see that my medical care was attended to, by not seeing that the next shift knew about my high blood sugar level, and that it needed to be re-tested. This caused a deliberate indifference by Nurse Kim Johnson.

First Amended Complaint, p. 11-12. Plaintiff alleges elsewhere in the First Amended Complaint that Defendant Johnson failed to properly treat his diabetes, resulting in diabetic keto-acidosis on January 5, 2006, and that Defendant Johnson delayed his treatment for that condition. Although any claims against Defendant Johnson individually for the 2005-06 incident are time barred, the undersigned finds that his allegations are relevant to his claim that she was deliberately indifferent to his condition in March of 2007, causing him to fall ill.

14

As stated before, "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority ...." Okla. Stat. tit. 51, § 152(9); see, e.g., Washington v. Barry, 55 P.3d 1036, 1039 (Okla. 2002) (pursuant to the GTCA, prison employee defendants are expressly immunized from liability while acting within the scope of their employment); Cooper v. Millwood Independent School Dist. No. 37, 887 P.2d 1370, 1374 (Okla. Civ. App. 1994) ("Although employees of the state are protected from tort liability while performing within the scope of their employment, such protection does not render such employees immune from liability for willful and wanton negligence or other conduct which places the employees outside the scope of their employment."); see Houston v. Reich, 932 F.2d 883, 890 (10th Cir. 1991) (individual defendants forfeited their immunity from liability under the GTCA where jury found defendants acted willfully, wantonly and in reckless disregard of plaintiff's constitutional rights). Other than citing the general rule that employees acting within the scope of their employment shall not be named as defendants, Defendant Johnson has failed to address whether she was acting within the scope of her employment for purposes of the GTCA.[8] However, Plaintiff does address the issue in both his initial and supplemental responses.

_____

[8]She does argue that Plaintiff's allegation that she acted under "color of state law" is inconsistent with an allegation that she acted outside the scope of her employment. Defendant Johnson's Motion, p. 4-5. However, the "under color of state law" allegation is required as part of any § 1983 action, which requires that an action be taken under the actual or apparent authority of the State, and is not necessarily co-extensive with the concept of "scope of employment." See Brown v. Gray, 227 F.3d 1278, 1290 (10th Cir. 2000).

Plaintiff contends that employees do not have immunity for willful and wanton conduct, and are not immune when they act in reckless disregard. Plaintiff's Response to Defendant Johnson's Motion, p. 5. He further contends that willful and wanton conduct means a course of conduct showing an actual or deliberate intention to injure or an utter indifference to or conscious disregard for the safety of others. Id. He claims that Defendant Johnson's failure to provide a diabetic diet when she was aware he had been prescribed one showed willful and wanton conduct on her part. Id. at 5-6. In his supplemental response, he claims that Defendant Johnson purposely failed to carry out prescribed treatment orders, which can be deliberate indifference under Eighth Amendment standards – a standard which he claims is equivalent to willful, wanton, and deliberate acts for which individuals have no immunity under the GTCA. Plaintiff's Supplemental Response, p. 2, 4.

Accepting the allegations of the complaint as true and construing those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to Plaintiff leads the undersigned to recommend denial of Defendant Johnson's motion to dismiss the State law claims related to Plaintiff's 2007 incarceration. When the allegations against Defendant Johnson specific to the 2007 incarceration are combined with those against her from his previous 2005-06 incarceration, it cannot be said that Plaintiff's claim of deliberate indifference or willful and wanton conduct are not plausible. As Plaintiff notes, the deliberate indifference standard applicable to Eighth Amendment denial or delay of medical treatment cases is similar under some circumstances to that needed to remove the immunity enjoyed by individual employees:

The deliberate indifference standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." The Supreme Court in <u>Farmer</u> analogized this standard to criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of serious harm. Thus, "[d]eliberate indifference does not require a finding of express intent to harm." An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." An official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Significantly, this level of intent can be demonstrated through circumstantial evidence:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

This is so because "if a risk is obvious so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it."

<u>Mata v. Saiz</u> 427 F.3d 745, 752 (10th Cir. 2005) (internal citations omitted). Moreover, the Oklahoma Supreme Court has held that the scope of employment question is decided by the court only where the answer is clearly indicated. <u>Nail v. City of Henryetta</u>, 911 P.2d 914, 918 (Okla.1996) ("The question of whether an employee has acted within the scope of employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts"). At the motion to dismiss stage, where the Court must accept the allegations of the complaint as true, and construe them in the light most favorable to the Plaintiff, the undersigned finds here that more than one reasonable conclusion can be drawn as to the scope of employment issue. In so finding,

however, the undersigned does not intend to foreclose the possibility of a different result in the context of a properly documented dispositive motion.    Accordingly, the undersigned finds that Defendant Johnson's motion to dismiss  Plaintiff's State law claim for his 2007 incarceration should be denied.

### C. SUMMARY

In summary, Defendant Johnson's motion to dismiss should be granted with regard to Plaintiff's State law and § 1983 claims against her for his 2005-06 incarceration in the GCDF because they are untimely. Alternatively, if Defendant Johnson was acting within the scope of her employment with regard to the 2005-06 incarceration, she is not a proper Defendant and her motion to dismiss Plaintiff's state law claims should be dismissed on that basis.  The motion should be denied with regard to Plaintiff's State law claims related to his 2007 incarceration because (1) under the appropriate standard his allegations are sufficient to state a claim that Defendant Johnson acted outside the scope of her employment, making her a proper Defendant; and (2) the claim is timely under Oklahoma's general tort statute of limitations.

## IV. MOTION OF COUNTY COMMISSIONER DEFENDANTS

The County Commissioner Defendants move to dismiss Plaintiff's claims against them on grounds similar to those of Defendant Johnson.  In some cases, the analysis is identical to that governing Defendant Johnson's motion, and so will not be restated.

### A. GOVERNMENTAL TORT CLAIMS ACT CLAIMS

As with Defendant Johnson's motion, the County Commissioner Defendants contend

that Plaintiff did not plead whether he complied with the provisions of the Act even though

that is the exclusive means whereby Plaintiff can recover from a governmental entity for its

torts. County Comm'r Defendants' Motion, p. 3.  As Defendant Johnson did, they also

contend that individuals are improper parties under the Act when acting within the scope of

their employment. Id. at 4. (citing Okla. Stat. tit. 51, §§ 152(9), 163(C)).

### 1.  INDIVIDUAL COUNTY COMMISSIONERS AS DEFENDANTS

The undersigned first finds that Plaintiff's allegations are insufficient to show that the

County Commissioner Defendants acted outside the scope of their employment. Plaintiff's

claims against the County Commissioner Defendants is contained in Count IV of the First

Amended Complaint:

> Attached to my opening brief, as exhibit # 15 is a Department of Justice report
> that was completed in April 2003.  In this report some of the findings were that
> (1) The Garfield County Detention Facility was understaffed and subjected
> inmates to risk of serious harm and injury to their safety. (2) That the nurse at
> the county jail was operating beyond her scope and did not follow protocals
> and procedures.
>
> A copy of this report was sent to the county officials which included the
> Garfield County Commissioners Mr. Scott Savage, Mr. Steve Hobson, and
> Sheriff Bill Winchester.  These problems have not been resolved by the
> County Commissioners, or the Sheriff, which creates a deliberate indifference
> to my serious medical needs.

First Amended Complaint, p. 14.  The twenty-six page report, dated April 17, 2003, states

that it is reporting the findings of inspections which took place on July 23-25, 2002, and

September 19-21, 2002, and covers fire safety, security, medical care, mental health care,

environmental health and safety, exercise and out of cell time, access to the courts, and

remedial measures. Opening Brief in Support of Civil Rights Complaint, at Ex. 15.  The letter

concludes by stating:

> We appreciate the cooperative approach taken by the Sheriff, the Undersheriff, the Jail Administrator and the detention officers at the Jail.  We understand that officials recognize many of the problems discussed in this letter....
>
> In the unexpected event that the parties are unable to reach a resolution regarding our concerns, we are obligated to advise you that 49 days after receipt of this letter, the Attorney General may institute a lawsuit pursuant to CRIPA to correct the noted deficiencies 42 U.S.C. Section 1997b(a)(1). Accordingly, we will soon contact County officials to discuss in more detail the measures that the County and Sheriff must take to address the deficiencies identified herein.

Id. at Ex. 15,  p. 26.

Thus, Plaintiff has only alleged that in 2003, two of the three Garfield County

Commissioners received a copy of a report outlining  deficiencies found during a inspection

at the GCDF three to four years prior to the incident in question.  Furthermore, the report

itself does not indicate that any of the named County Commissioners had any specific

responsibility for the deficiencies noted, individually or as a body (although "the County"

is generically referenced at points).

As noted earlier in connection with Defendant Johnson's motion, "Scope of

employment" is defined by the Act as follows:

> "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

Okla. Stat. tit. 51, § 152(9).  Although at the motion to dismiss stage the Court must accept the allegations of the complaint as true, and construe them in the light most favorable to the Plaintiff, the undersigned finds that Plaintiff has failed to allege that the County Commissioner Defendants have acted outside the scope of their employment with regard to the events which occurred during Plaintiff's incarceration at the GCDF in late 2005-06.  At the most, he has alleged that they received a copy of a report listing past deficiencies.  The report itself does not even indicate that the Board of County Commissioners has responsibility for operation of the jail, and certainly does not allege that any of the individual County Commissioner Defendants acted outside the scope of their employment with regard to the incidents that occurred concerning Plaintiff in 2005-06.  That being the case, they are improper Defendants under the GTCA and are entitled to dismissal.

### 2.  PLAINTIFF'S CLAIM UNDER THE GTCA

As the individual County Commissioner Defendants are improper Defendants under the Act, the next issue becomes where Plaintiff has complied with the notice and limitation provisions of the GTCA so as to state a claim against the Garfield County Commissioners in their official capacities.  The undersigned finds that he has not. As indicated earlier, the filing of a proper notice and institution of litigation within 180 days pursuant to § 157(A) and (B) is a condition precedent and an essential element of any right to a cause of action against a county.  Lasiter v. City of Moore, 802 P.2d 1292, 1293 (Okla. Civ. App.1990).  Thus, Plaintiff's failure to allege that he has complied with these prerequisites results in his failure

to state a claim under the Act.[9]   Accordingly, Plaintiff's claim under the Act must be dismissed.

## B. FEDERAL CONSTITUTIONAL CLAIMS

### 1. 2005-06 INCARCERATION

As with his claims against Defendant Johnson, Plaintiff's claim for deliberate indifference to his serious medical needs by the County Commissioner Defendants accrued no later than January 5, 2006.  Thus, the limitations period expired on January 5, 2008.  The First Amended Complaint, filed on February 13, 2008, is thus untimely with regard to Plaintiff's constitutional claims against the County Commissioner Defendants related to his 2005-06 incarceration at the GCDF.

### 2. 2007 INCARCERATION

However, unlike Defendant Johnson, the County Commissioner Defendants also move to dismiss Plaintiff's claims with regard to his 2007 incarceration on grounds that he has

---

[9]The County Commissioner Defendants note that Plaintiff filed his notice of claim on February 28, 2007, by filing a letter with the Garfield County Clerk's Office, addressed to Defendants Winchester and Taylor, and the non-party Coleman, County Commissioner Defendants' Motion, p.3, and they attach a copy to their motion to dismiss.  Based upon this, they argue that Plaintiff filed his initial complaint herein prior to the expiration of the mandatory 90 day consideration period, rendering it premature, and then amended his complaint more than 180 days after his GTCA claim matured, rendering it untimely.  Although Defendants are correct that a prematurely filed complaint does not ripen into a timely action when the 90-day period for considering the claim expires, Hathaway v. State ex rel. Med. Research & Technical Auth, 49 P.3d 740, 742-43, 744 (Okla. 2002), the undersigned finds that it is not necessary to consider the attached notice of claim in determining the County Commissioner Defendants' motion to dismiss due to Plaintiff's failure to plead compliance with the Act.  Moreover, the undersigned notes that although Plaintiff alleges that he provided an earlier notice of claim and attaches the same to his response, the letter Plaintiff provides was not "filed with the office of the clerk of the governing body" as required by Okla. Stat. tit. 51, § 156(D).

failed to allege personal participation in the alleged constitutional violation. County Commissioner's Motion, p. 7. They cite to Plaintiff's sole reliance on the above referenced report, and his allegation that the problems in the report have not been resolved by the "County Commissioners, or the Sheriff, which creates a deliberate indifference to my serious medical needs." Id. (citing First Amended Complaint, p. 14, ¶ (4)(b)(2)). The County Commissioner Defendants claim that they do not have final policy making authority over the jail, and have provided a copy of a trust indenture referring to the Garfield County Sheriff as an independent county officer with responsibility for operation and management of the jail. County Commissioners' Motion, Ex. 2, p. 8.

The County Commissioner Defendants are correct in that a supervisor cannot be held liable under §1983 solely on a respondeat superior basis. Monell v. Dep't of Social Serv., 436 U.S. 658, 691-695 (1978). "Liability of a supervisor under §1983 must be predicated on the supervisor's deliberate indifference," and a plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (quotations omitted); Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988). "It is not enough to establish that the official should have known of the risk of harm." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998). Plaintiff has not alleged that any of the named county commissioners for Garfield County personally participated in the alleged deprivations which occurred during Plaintiff's confinements at the GCDF. Therefore, the cause of action against the County Commissioner

Defendants in their individual capacities should be dismissed for failure to state a claim for relief under 42 U.S.C. § 1983. Moreover, as is referenced in the document attached to the County Commissioner Defendants' motion,[10] under Oklahoma law a county sheriff is responsible for the operation and maintenance of the jail and is responsible for the detainees and inmates in his custody. See Okla. Stat. tit. 19, §513; Lopez v. LeMaster 172 F.3d 756, 763 (10th Cir. 1999). Thus, the Garfield County Commissioners do not have final policymaking authority over the GCDF, entitling the County Commissioner Defendants to dismissal of Plaintiff's § 1983 claims.

## C. SUMMARY

In summary, the County Commissioner Defendants are entitled to dismissal in that Plaintiff has failed to allege that they acted outside the scope of their employment, making them improper defendants under the GTCA. Furthermore, Plaintiff has failed to allege that he has complied with the notice and limitation provisions of the Act - an essential element and condition precedent to an claim under the GTCA - entitling the County Commissioner Defendants to dismissal in their official capacities as well. Finally, the County Commissioner Defendants are entitled to dismissal of Plaintiff's claims under § 1983 for his failure to allege that they personally participated in the alleged constitutional violations.

---

[10]Because the authority of the sheriff over the jail is a matter of state law, and the trust indenture merely references this fact, the undersigned has not considered the trust indenture itself in determining the County Commissioner Defendants' motion.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the motion to dismiss of Defendant Johnson [Doc. No. 87] be granted in part and denied in part, and that all of Plaintiff's state law claims and his § 1983 claims related to his 2005-06 incarceration against Defendant Johnson be dismissed. It is further recommended that the motion to dismiss of Defendants Steve Hobson, Michael Postier, and Scott Savage [Doc. 85] be granted. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by June 26, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation only partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 6th day of June, 2008.**


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE